UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

BOBBY RAY JAGERS                          CIVIL ACTION NO. 05-cv-0952

VERSUS                                    JUDGE WALTER

WARDEN LOUISIANA STATE                    MAGISTRATE JUDGE HORNSBY
PENITENTIARY

## REPORT AND RECOMMENDATION

### Introduction

A Bossier Parish jury convicted Bobby Ray Jagers ("Petitioner") of two counts of armed robbery and two counts of aggravated kidnapping.  The convictions were affirmed on direct appeal.  State v. Jagers, 786 So.2d 284 (La. App. 2d Cir. 2001), writ denied, 815 So.2d 831 (La. 2002).  Petitioner then filed a post-conviction application.  The state courts did not grant relief with respect to any of the claims, and Petitioner then filed this federal petition for habeas corpus relief.  It is recommended that the petition be denied.

### Summary of Relevant Evidence

Petitioner does not contest the facts as stated by the state appellate court, although he does contest the state court's conclusion that those facts are sufficient evidence to support his convictions.  This recitation of the relevant evidence is consistent with the state appellate court's summary of the evidence.

At approximately 7:30 p.m. one February evening in 1998, Barry Vance was robbed at gunpoint in the parking lot of Ryan's Steak House on Benton Road in Bossier City.  The

robber took Vance's wallet and gold necklace, then he drove away in a Camaro Z-28. Vance, a commercial airbrush artist, drew for police a sketch of the robber and the Camaro.

Shortly after the robbery, and while Vance was still at the police station, Captain Stinson of the Bossier City Police Department, while investigating another armed robbery, found a Camaro that fit the description given by Vance. The car was in the parking lot of the Swan Lake Apartments in Bossier City. The police took Vance to the apartment complex, and Vance identified the car. Police determined that the owner of the Camaro was Lisa Tate, Petitioner's girlfriend. Three days later, Mr. Vance identified Petitioner from a photographic lineup as the man who committed the robbery. Vance also made an in-court identification of Petitioner. See, generally, testimony of Barry Vance at Tr. Vol. VII, pp. 106-34. Petitioner does not challenge the sufficiency of this evidence to support one of the two armed robbery convictions.

The second armed robbery conviction and the two aggravated kidnapping convictions stem from events that happened to Patricia Clark and Willie Lane soon after the first robbery. Tanya Simpson testified that she, Tracy Robinson and Raymond King were passengers in the Camaro driven by Petitioner. The group had driven into town that night from nearby Keithville. Ms. Simpson testified that she and the other two passengers were in the Camaro at the time Petitioner robbed Mr. Vance in the Ryan's parking lot. Ms. Simpson stated that they heard sirens after they drove from the scene, so Petitioner began driving fast. The car overheated and stalled, so the group waited for the car to cool down before starting up again.

The car soon overheated again, at which time they pulled into the Swan Lake Apartments parking lot (where Mr. Vance later identified the car). Passengers Robinson and King did not testify. See testimony of Tanya Simpson at Tr. Vol. VII, pp. 170-216.

Patricia Clark, who had driven her husband's 1987 Oldsmobile to Burger King with Willie Lane (her sister's boyfriend) as her passenger, pulled into the Swan Lake complex parking lot. Petitioner approached the Clark vehicle in the parking lot. Mr. Lane testified that soon after he stepped from the car, Petitioner approached, pointed a gun at Lane's head, and told him to get back in the car. Lane told Ms. Clark to do the same so that he would not be shot. Ms. Clark's testimony provided similar facts. She said that Petitioner approached and first asked for ride and, after she refused his request, Petitioner pulled a pistol and pointed it at Mr. Lane. Mr. Lane told Ms. Clark to do as Petitioner said, and Petitioner and his companions climbed in the back seat of the car.

Petitioner seated himself immediately behind Lane on the passenger side of the car, still holding the gun. Ms. Clark testified that she could not see where Petitioner was pointing the gun, but Petitioner told her to drive him to Princeton, a nearby town located along U.S. Highway 80.

Mrs. Clark drove her car from the apartment parking lot onto Swan Lake Road towards U.S. Highway 80. She told Petitioner several times that she needed to stop and get gas. Petitioner told her to drive on and that he would buy gas later. Mrs. Clark drove about a mile and then quickly pulled her car into the parking lot of a Circle K store at the

intersection of Swan Lake Road and Highway 80. She and Mr. Lane jumped out of the car, ran inside the store, and asked the employee to call the police. Ms. Clark pulled her keys from the ignition before she jumped from the car, but her car was of a condition that the engine would continue to run even after the key was removed. Ms. Clark's vehicle was driven away while she was inside the store. The next day, Ms. Clark's car was found burned in Keithville. Both Ms. Clark and Mr. Lane identified Petitioner from a photographic lineup and thereafter, at trial. See testimony of Patricia Clark and Willie Lane at Tr. Vol. VII, pg 134 – Vol. VIII pg. 158.

**Sufficiency of the Evidence**

Petitioner argues that the evidence was not sufficient to support his convictions other than the armed robbery of Mr. Vance. In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). The trier of fact has broad discretion to "resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id. The Jackson inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 113 S.Ct. 853, 861 (1993).

The Louisiana appellate court invoked, recited and applied the Jackson standard on Petitioner's direct appeal, so its decision was not "contrary to clearly established Federal law," and Petitioner can obtain habeas relief only if the State court's decision was an "unreasonable application" of Jackson.  28 U.S.C. § 2254(d); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000); Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001).

Under the unreasonable application clause, a federal court is permitted to grant the writ if the state court has identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the prisoner's case. Williams, 120 S.Ct. at 1523. Even if the federal court, in its independent judgment, has a firm conviction that the state court was incorrect in its application of a federal constitutional principle, that alone does not permit the federal court to grant habeas relief. Relief is not permitted unless the state court decision was so wrong as to be objectively unreasonable. Lockyer v. Andrade, 123 S.Ct. 1166, 1175 (2003). And it is only the state court's ultimate decision, not the quality of its analysis or opinion, that is at issue. Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002)(en banc).

Aggravated kidnapping is defined in La. R.S. 14:44 as "the doing of any of the following acts [including the forcible seizing and carrying of any person from one place to another] with the intent thereby to force the victim, or some other person, to give up anything of apparent present or prospective value, or to grant any advantage or immunity, in order to secure a release of the person under the offender's actual or apparent control."

Petitioner argues that the evidence might support a conviction of simple kidnapping or carjacking, but he contends that it does not support a conviction for aggravated kidnapping because the evidence does not show that he acted with the intent to force Ms. Clark or Mr. Lane to give up anything of value.  Petitioner cites State v. Acevedo, 633 So.2d 828 (La. App. 4th Cir. 1994), in which the court determined that the evidence of a sexually assaultive intent was ambiguous so did not support an aggravated kidnapping conviction where the defendant had used a gun to force the victim to give him a ride and then later attempted to sexually assault her.  Petitioner points to the lack of testimony that he attempted to prevent the victims from leaving the car, demanded that they return to the car, or used his gun to order either victim to relinquish control of something that they had on their persons.

The state appellate court addressed this issue on direct appeal.  It observed that the Supreme Court of Louisiana in State v. Arnold, 548 So.2d 920 (La. 1989) had held that the phrase "anything of apparent present or prospective value" in the aggravated kidnapping statute includes the situation where an offender forces a victim to transport the offender to a particular location.  The appellate court found that the record in this case supported the jury's conclusion that Petitioner intended to extort something of value (a ride to Princeton) by playing upon the victims' fear and hope of eventual release in order to gain the victims' compliance with his demands.  It was not necessary, the appellate court stated, for the prosecution to prove that Petitioner explicitly stated to the victims that compliance with his demands would result in their release.  State v. Jagers, 786 So.2d at 287-88.

Page 6 of  22

The state court's resolution of the issue was entirely reasonable in light of the governing Louisiana statute and jurisprudence.  The ambiguity observed in the <u>Acevedo</u> case cited by Petitioner is not present in this case.  Petitioner may not have expressly stated the terms and conditions of the transaction when he thrust a pistol in Mr. Lane's face and demanded that Ms. Clark give him a ride to Princeton, but his intent was more than clear from the circumstances.  The state court's application of <u>Jackson</u> to these facts was not objectively unreasonable, so habeas relief is not available.

Petitioner next challenges the sufficiency of the evidence to convict him of the armed robbery of Ms. Clark.  Louisiana law defines armed robbery as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." La. R.S. 14:64. Petitioner argues that there is no evidence he ever pointed his gun at Ms. Clark and demanded she relinquish control of anything she had on her person.  Petitioner made a similar argument on direct appeal that he took nothing of value from Ms. Clark's immediate control because she was in the store and away from Petitioner when he took her car.  The appellate court observed that Ms. Clark had fled the car to escape possible harm from a pistol-wielding Petitioner, who then immediately drove off in the car.  Those facts and the time frame satisfied the appellate court that the evidence was sufficient for a rational juror to determine that the car under Ms. Clark's control had been taken through the intimidation of an armed bandit.  It added that, under state law, force or intimidation may be applied at

any time in the course of the crime to complete the offense of armed robbery.  <u>State v. Jagers</u>, 786 So.2d at 288.

Once again, the state court's application of <u>Jackson</u> to the facts was not objectively unreasonable.  The court carefully reviewed the relevant testimony and applied it in a reasoned fashion to the elements of the crime, with due consideration for the <u>Jackson</u> standard.  The conclusion it reached might not be the only reasonable conclusion that a court could reach under those circumstances, but it was more than adequate to withstand federal habeas review under 28 U.S.C. § 2254(d).

**Appearance in Shackles**

The Bossier Parish sheriff wrote a letter to the trial judge shortly before trial began.  He advised the judge that Petitioner "has indicated several times that he will try to escape and is therefore a definite flight risk."  The sheriff added that he found it necessary to instruct the jailers that Petitioner "is to be taken to the courtroom in leg irons."  When voir dire began, defense counsel objected to the court's ruling (apparently off the record) that Petitioner be kept in leg irons during the proceedings.  Petitioner expressed concern that the irons would prejudice his client in the eyes of the jury.  Tr. Vol. V, p. 2.  Petitioner did not raise this claim on direct appeal, but he did assert it in a post-conviction application.  The same trial court judge who presided over the trial denied the application.  He wrote that the record contained "ample justification" for the restraints and that he believed that Petitioner had been a flight risk so took precautions to ensure the safety of the courtroom.  The court held that, in the

alternative, Petitioner's failure to pursue the claim on direct appeal subjected the claim to a procedural bar under La. C. Cr. P. art. 930.4(C).  Petitioner applied to the appellate court for a writ.  That court wrote, with respect to this claim, that:  "The applicant was shackled in the jury's presence; however, he failed to show what prejudice the shackling might have caused."  The Supreme Court of Louisiana denied writs without comment.

The presumption of innocence is a basic component of a fair trial under our system of criminal justice.  Estelle v. Williams, 96 S.Ct. 1691 (1976).  The physical appearance of a defendant while in the presence of the jury may adversely affect that presumption.  Id.  Courts do, however, have an obligation to maintain courtroom order and attend to the safety and security of those in the courtroom.  Illinois v. Allen, 90 S.Ct. 1057 (1970) (approving the binding and gagging of an obstreperous defendant).  Thus, a defendant may be shackled to preserve the dignity of the trial, secure the safety of its participants, and prevent escape if a defendant poses a legitimate flight risk.  See Chavez v. Cockrell, 310 F.3d 805, 808-09 (5th Cir. 2002).

The trial judge was informed by the sheriff that Petitioner posed a flight risk, which was a reasonable basis for the trial judge to grant the sheriff's request that Plaintiff remain in leg irons during court appearances. There is also no indication that Petitioner was unduly paraded before the jury in leg irons or that he ever did anything other than sit at the table.

Under these circumstances, the state court's application of the relevant federal law principles, as clearly established by the Supreme Court, was not objectively unreasonable.[1]

**Promises from the Jury**

During voir dire, the prosecutor asked prospective jurors questions such as: "Mr. Williamson, if I, in fact, prove beyond a reasonable doubt the defendant committed two counts of aggravated kidnapping and two counts of armed robbery, would you vote guilty as charged?" The jurors answered yes. Petitioner complained in his post-conviction application that allowing the prosecutor to extract such promises denied him a fair trial. The trial court judge denied the claim because: "All the district attorney was doing was asking the prospective jurors if they would be able to apply the law to the case." The judge added that the prosecutor was "not eliciting promises as to certain circumstances or ... as in the cases cited by the petitioner." The appellate court agreed that: "The state's questioning of

---

[1]The court can also take judicial notice of evidence assembled in a civil rights action filed by Petitioner, <u>Jagers v. Deen</u>, 01-cv-0676 (W.D. La.). The warden of the Bossier Parish jail testified in that case that, when Petitioner was awaiting trial on the charges that underlie this habeas petition, Petitioner was a problematic inmate. Examples of his misbehavior included throwing urine on inmates, threatening deputies and other inmates, involvement in a fight that required the use of chemical weapons to halt, disrupting court by making noise in his nearby cell, using toilet paper to start a fire in a cell block, and refusing to obey orders to the point that chemical weapons were required to subdue him. Petitioner also was reported to have said at a court appearance that if he were convicted there would not be enough deputies to bring him back to jail. About a month before trial, Petitioner attempted to grab the jail keys from a deputy. Five days after the convictions at issue, the warden received information from an inmate that he had overheard a phone conversation between Plaintiff and his sister in which they discussed a plan to pay a trustee $5,000 to deliver hacksaw blades to Petitioner from a garbage dumpster outside the jail. <u>See</u> Report and Recommendation at Doc. 24.

prospective jurors in voir dire as to their ability to vote guilty if guilt was proved beyond a reasonable doubt was proper."

Petitioner has the burden of showing that the state court's ruling was an objectively unreasonable application of federal law that is clearly established by Supreme Court precedent.  28 U.S.C. § 2254(d).  Petitioner has not cited any precedent that is particularly applicable to the kinds of commitments the prosecutor asked for in this case.  Rather, he relies on cases that generally require an impartial jury.  The undersigned agrees with the state trial judge that the questions merely ask if the jurors would honor their oath and return a conviction if the evidence proved guilty beyond a reasonable doubt.  There is nothing inherent in that to deprive Petitioner of a fair and impartial jury, so habeas relief is not available.

**Double Jeopardy**

Petitioner argued in his post-conviction application that double jeopardy principles did not allow both (1) his convictions for the aggravated kidnapping of Ms. Clark and Mr. Lane and (2) his conviction for the armed robbery of Ms. Clark.  The Double Jeopardy Clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment, provides:  "No person shall ... be subject for the same offence to be twice put in jeopardy of life or limb."  The provision prohibits a state from punishing a person twice "for the same offense."  Mitte v. U.S., 115 S.Ct. 2199, 2204 (1995).  The Supreme Court, in determining whether two statutes punish twice for the same offense, asks whether each offense must

contain an element not contained in the other.  <u>Blockburger v. U.S.</u>, 52 S.Ct. 180 (1932); <u>U.S.</u> <u>v. Agofsky</u>, 458 F.3d 369, 371 (5th Cir. 2006).  Louisiana courts often refer to <u>Blockburger</u> but more often employ what is called a "same evidence test."  That state-law standard is broader in concept than <u>Blockburger</u>.  <u>See</u> <u>Sanders v. Cain</u>, 2002 WL 32191037 n.25 (E.D. La. 2002); <u>Tran v. Cain</u>, 1999 WL 460774 n.27 (E.D. La. 1999).  Petitioner has not cited any Supreme Court decision that has clearly established the same evidence test as  part of *federal* double jeopardy requirements.  Of course, federal habeas relief is not available for mere errors of state law.

The trial court judge cited <u>Blockburger</u>, but also the Louisiana same evidence test, and his analysis focused more on the same evidence arguments.  He denied the claim, and the appellate court held:  "There was no double jeopardy because different evidence was used to provide the elements of each offense."  Petitioner continues to argue under the same evidence test, but it is the <u>Blockburger</u> test that must be satisfied to obtain federal habeas relief.

The following discussion demonstrates that <u>Blockburger</u> is satisfied.  Aggravated kidnapping includes an element (as charged in this case) of the forcible seizing and carrying of a person from one place to another.  That is not an element of armed robbery, and neither is the element that the victim or other person give up a thing of value in order to secure a release of the victim.  On the other hand, armed robbery has an element that the offender be

armed with a dangerous weapon, which is not an element of aggravated kidnapping. There is no basis for habeas relief on this claim.

**Other Crimes Evidence**

Ms. Clark was asked if she knew what happened to her car after it was taken from the Circle K.  She replied that it was "burned up" and completely destroyed.  Petitioner argued on post-conviction application that this and similar references to "other crimes" unduly prejudiced his case.  Ms. Clark did not testify, however, that Petitioner burned the car. Obviously, Ms. Clark was not present when the car was burned in Keithville, so she could not say who set it afire.  Tanya Simpson, however, was present when the car was burned, and she testified that Raymond King set it on fire while Petitioner was around the corner getting another car.  Tr. Vol. 8, p. 178.

Another event about which Petitioner complains of its admission comes from the testimony of Tanya Simpson. She testified that, on the night of the crimes at issue, Petitioner was looking for  a woman who owed him money, and that woman was often seen with Ms. Simpson.  Petitioner went to Ms. Simpson that evening and asked that she come with him on his search. The prosecutor asked Simpson why she went with Petitioner.  This exchange then occurred:

> Q.    Ms. Simpson, why did you go with Bobby Jagers?
>
> A.    He pretty much persuaded me.
>
> Q.    How did he persuade you?

      A.     He told me he was going to shoot me in my leg.

      Q.     Okay.  Did he actually fire a round?

      A.     Yes, he did.

      Q.     Okay.  And did he tell you that you had to go with him?

      A.     Yes.

Tr. Vol. 8, p. 207.

Petitioner's post-conviction application argued that the admission of this evidence ran afoul of Louisiana rules and jurisprudence regarding the admission of other crimes evidence without pre-trial notice.  The trial court judge addressed the claim in terms of state law and found that the other events were admissible as part of the res gestae of the crimes charged and that pre-trial notice was not required under state law rules.  The appellate court stated that the evidence of the other wrongs was admissible because it was related to the conduct that constituted an integral part of the transactions that were the subject of the trial.

Petitioner continues to argue his claim in terms of Louisiana law.  Federal courts do not grant habeas relief based on mere errors in the application of state evidentiary rules or even consider it relevant whether state evidentiary rules were satisfied. Only federal constitutional errors that satisfy the demanding standards of Section 2254 merit habeas relief. The Due Process Clause provides a mechanism for relief when a state court wrongfully admits evidence, but only if the evidence is so unduly prejudicial that it renders the trial fundamentally unfair. <u>Bigby v. Cockrell</u>, 340 F.3d 259, 271-72 (5th Cir. 2003), citing

Dawson v. Delaware, 112 S. Ct. 1093 (1992) and Estelle v. McGuire, 112 S.Ct. 475 (1991).

If constitutional error is found, a petitioner's claim will still fail absent a showing that the

evidence had a substantial and injurious effect or influence in determining the jury's verdict.

Bigby, 340 F.3d at 272.

The reference to Raymond Maxey burning the Clark car is of almost no prejudicial

impact.  The testimony that Petitioner used gunfire to convince Ms. Simpson to accompany

him has more potential prejudice, but the overwhelming evidence that it was Petitioner who

committed the crimes charged leaves no room to argue that any mistake in the admission of

that bit of testimony had a substantial and injurious effect on the guilty verdicts.  There is no

basis for habeas relief with respect to this evidentiary issue.

**Ineffective Assistance of Counsel**

Petitioner argues that defense counsel was ineffective in a number of ways.  Petitioner

bears the burden of proving two components, deficient performance and prejudice, to

establish ineffective assistance of counsel.  Counsel's performance was deficient only if he

made errors so serious that, when reviewed under an  objective standard of reasonable

professional assistance and afforded a presumption of competency, he was not functioning

as the "counsel" guaranteed by the Sixth Amendment.  Strickland v. Washington, 104 S.Ct.

2052, 2064 (1984).  Prejudice exists only if there is a reasonable probability that, but for the

error, the result of the trial would have been different.  A reasonable probability is one

sufficient to undermine confidence in the outcome.  Id. 104 S.Ct. at 2068.

The test for habeas purposes is not whether a petitioner made the showing required under <u>Strickland</u>. The test is whether the State court's decision – that the petitioner did not make the <u>Strickland</u> showing – was contrary to, or an unreasonable application of, the standards provided by <u>Strickland</u>'s clearly established federal law. <u>Williams v. Taylor</u>, 120 S.Ct. 1495 (2000); <u>Henderson v. Quarterman</u>, 460 F.3d 654, 665 (5th Cir. 2006).

Petitioner argues that counsel should have objected when the prosecutor asked for promises from prospective jurors, should have filed a motion for mistrial based on the use of other crimes evidence, and should have filed a motion to quash the indictment based on double jeopardy.  When Petitioner presented these claims in his post-conviction application, the trial court judge rejected them because each of the underlying issues had been found to be without merit.  The state appellate court agreed that Petitioner failed to show that counsel's representation fell below an objective standard of reasonableness or that the alleged deficient performance prejudiced his defense.

The undersigned reviewed the underlying claims only as to whether they presented federal constitutional violations, but the state courts also addressed those claims under state law and found that they lacked merit under even those more lenient standards.  The trial court issued a reasoned decision that found those issues to be without merit, and counsel was not objectively unreasonable for not pressing those meritless issues in the trial court or on appeal. Similarly, the state court's adjudication of these <u>Strickland</u> claims was not an objectively unreasonable application of <u>Strickland</u> to this case.

Petitioner listed in his post-conviction application and in his federal petition six grounds on which he believed counsel was ineffective.  The fourth item on the list is "counsel failed to conduct adequate pretrial investigation."  Neither the post-conviction application nor the federal habeas petition articulates a factual basis for this assertion, and it is not even mentioned again in the submissions.  The state courts did not specifically address the issue, but their implicit rejection of it was appropriate.  Habeas and post-conviction applicants must set forth specific allegations of fact, not mere conclusory allegations, to warrant further proceedings on a claim.  See U.S. v. Edwards, 442 F.3d 258 n.10 (5th Cir. 2006).

The next alleged basis for an ineffective assistance requires some background. Barry Vance testified that Petitioner held a gun on him and took his gold chain and a wallet that contained about $15.  The police found a gold chain in the console area of the Camaro that Petitioner was driving at the time of the robbery.  Tr. Vol. 7, p. 67.  Mr. Vance described the chain as a diamond-cut rope with an anchor and wheel emblem.  Id. at 108-09.  On cross-examination, Mr. Vance said he had purchased the chain two or three years earlier from a pawn shop for a price of $280.  He added that the chain found in the Camaro appeared to be the chain that was taken from him.  Id. at 126-27.

Tanya Simpson admitted that Petitioner robbed Mr. Vance in the parking lot, but she said that when Petitioner snatched something from Vance's hand a necklace "came with it." She later suggested that the chain fell into the Camaro during the confrontation, and she said

that the chain introduced by the state did not appear to be the one she had seen.  Tr. Vol. 8, pgs. 171-73, 182 and 192.

Petitioner argues that his counsel was ineffective because he did not subpoena the owner of the pawn shop where Mr. Vance said he purchased the chain.  Petitioner speculates that the pawn shop owner would have confirmed that the chain introduced in evidence was not the chain that Vance purchased from the pawn shop, which would have "destroyed Vance's credibility" and backed the defense theory that the incident was a drug deal gone wrong.  The state court rejected the argument on the grounds that it was general and conclusory.

"[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative." Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2000). In addition, for Petitioner to demonstrate the requisite Strickland prejudice, "[he] must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial." Id. Evans reversed a district court that had granted habeas relief on a similar Strickland claim. The district court was faulted for assuming that witnesses, from whom no affidavits were presented, would have testified favorably for the defense. See also Bruce v. Cockrell, 74 Fed.Appx. 326 (5th Cir. 2003)(rejecting Strickland claim because petitioner "did not submit any affidavits by the uncalled witnesses themselves, or offer any evidence that they would have been willing to testify at the punishment phase of his trial."); and O'Brien v. Dretke, 156 Fed.Appx. 724 (5th

Cir. 2005) (denying COA when witness's affidavit was submitted but it "d[id] not indicate what the nature of his testimony would have been.")

It is pure speculation that the pawn shop owner would be able to determine whether the chain at trial was the same one he sold two or three years earlier.  Furthermore, there was abundant other evidence that Petitioner committed an armed robbery of Mr. Vance in which something of value (including cash) was taken.  Whether it was this precise necklace was not critical, and establishing that it was not the same chain would have had negligible impact on Mr. Vance's credibility.  The state court did not apply Strickland to this claim in an objectively unreasonable manner, so habeas relief is not permitted.

Finally, petitioner argues that appellate counsel should have raised on appeal all of the alleged errors discussed above.  Appellate counsel may run afoul of the performance prong of Strickland if he fails to discover non-frivolous issues and file a merits brief raising them. Smith v. Robbins, 120 S.Ct. 746, 764 (2000).  Counsel need not raise every non-frivolous ground available on appeal, but a reasonable attorney will research the relevant facts and law and make an informed decision as to which issues have enough potential merit to warrant pursuit on appeal.  See Amador v. Quarterman, 458 F.3d 397, 410 (5th Cir. 2006).  Even if a petitioner establishes deficient performance, he must also show that counsel's objectively unreasonable performance prejudiced the petitioner.  That requires the petitioner to show that, but for counsel's unreasonable failure to raise an issue, the outcome of the appeal would have been different.  Amador, 458 F.3d at 411.

None of the issues that Petitioner urges should have been raised on appeal have been found by the state courts or this court to have merit, so there is no basis to find that appellate counsel was ineffective or, assuming ineffectiveness, that there was prejudice stemming from the omission of these errors from the direct appeal.  Petitioner is not entitled to habeas relief on any of his ineffective assistance of counsel claims.

**The Indictment**

Defense counsel filed a motion to quash the grand jury indictment for two counts of aggravated kidnapping.  He argued that the indictment did not conform to the requirements of state procedural law.  Tr. Vol. IV, p. 45.  After hearing argument, the trial court ruled that the indictment complied with state law.  Tr. 51-52.  Petitioner did not raise the issue on direct appeal, but he did present it in his post-conviction application.  The trial court judge repeated his finding that the indictment complied with state law and noted that the claim should be procedurally barred for failure to pursue it on appeal.  See La. C. Cr. P. art. 930.4(C).  The appellate court agreed that the indictment "was in proper form in accordance with" Louisiana Code and Constitutional requirements. The Supreme Court of Louisiana denied writs without comment.

The sufficiency of a state indictment is not a matter of federal habeas relief unless it can be shown that the indictment is so defective that it deprives the state court of jurisdiction. McKay v. Collins, 12 F.3rd 66, 68 (5th Cir. 1994).  That question is foreclosed to federal habeas review, however, if the sufficiency of the indictment was presented to the highest

court of the state and that court held that the trial court had jurisdiction over the case.  Wood v. Quarterman, 503 F.3rd 408, 412 (5th Cir. 2007).   The sufficiency of Petitioner's indictment was squarely presented at all levels of the state court system, and those courts held that the indictment was adequate. This claim is, therefore, foreclosed to federal habeas review.

Accordingly;

**IT IS RECOMMENDED** that the Petition for Writ of Habeas Corpus be **denied** and that Petitioner's complaint be **dismissed with prejudice**.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).   A party may respond to another party's objections within ten (10) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to

Page 21 of  22

proposed factual findings and legal conclusions accepted by the district court.  See Douglass

v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 13th day of May, 2008.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE